| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| U.S. District Courts Middle District 401 N. Patterson St 212 Valdosta, GA 31601 | Ali Ka Seay 2279. Dewberry Road Quitman, GA 31643 |

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|
| ☐ MILITARY ☑ CIVILIAN | 11-10-1984 | Single | Oct 2006 - current day | |

**8. BASIS OF CLAIM** (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

Continued on additional pages

**9. PROPERTY DAMAGE**

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

N|A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

N|A

**10. PERSONAL INJURY/WRONGFUL DEATH**

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

Injuries are explained in detail in Conjunction with #8.

**11. WITNESSES**

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| | |

| 12. (See instructions on reverse). | **AMOUNT OF CLAIM** (in dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
| | 5,000,000.00 | | 5,000,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| *[signature]* | 229-539-3137 | 4-8-2024 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable

95-109

NSN 7540-00-634-4046

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

Hello my name is Alika Seay. For the past 18 years I have been involved in an ongoing legal dispute against the United States (Veterans Administration, Office of General Counsel and Federal Tort Group) concerning a brutal MST that I experienced while in the United States Air Force. As a result, I have been deemed 100% disable by the VA (rightfully so). Unfortunately, every single day is a battle for me to carry out normal day to day activities causing me to miss the deadline for this claim to be submitted. As noted in this claim, I have not been given the proper knowledge multiple times. On today, April 15, 2024 I was told by Ellen Hastings (FTG Attorney) that I should be filing this case within the District Courts when a few months ago she told me that I had a choice....either file a constitutional tort or US District Court. I am begging for you to please accept this case that has lingered on for so long. I apologize sincerely for the deadline mishap. The tardiness of this claim is one of the horrible drawbacks of suffering Major Depressive Disorder and a myriad of stomach issues. Your cooperation and understanding is greatly appreciated in this matter.

Thank you so much
Alika Seay

April 11, 2024

<u>Alika Seay vs The United States</u> (Veterans Administration, Federal Tort Group and Office of General Counsel)

This constitutional tort is in regard to my 14th amendment right being violated, disregarded and ignored from October 2006 to current day. Due to the complex nature of the crime and its aftermath, the summary is long and ongoing which furthers my reasoning for this tort. I Alika Seay sincerely ask that you put yourself in my shoes and treat me like a victim instead of a number. On November 7, 2022, I filed a Federal Tort Claim that was subsequently denied due to lack of jurisdiction and "timeframe"(as a result,I was told by Ellen Hastings FTCG Legal Representative that a Constitutional Tort would be the appropriate next step). The most important part of the consideration process is to understand that the dates are continuous. There has not been an ending to the reckless disregard that I have been a victim of. This tort is teeming with clear and convincing evidence which is why it has been an obligation for the negligence to be remedied. All of these events have been an obligation of contract concerning both entities mentioned. Recanting the events, crimes and intentional disregard has always been brutal and sickening, causing added anguish to my greatly diminished mental capacity. However, it is my hope that this will be the last time that I have to relive the darkest moments of my life. I wish I could make it brief but for the sake of being literal, clear and concise, I have to explain in detail.I understand thoroughly that the Constitution provides for equal protection under the law, first amendment retaliation, speech suppression and deprivation of life, liberty or property without due process of law. With any legal correspondence, I understand that it is best to limit content as much as possible; however, there is no way to fully explain the gravity of my experiences without being completely thorough and accurate. Since October 2006, I have reached out to countless military personnel, agencies, VA representatives and medical staff in an attempt to receive much needed medical assistance and therapy for the brutal MST that I endured by what was my supervisor at the time. Unlawfully I was denied the opportunity to obtain justice after reporting the MST and its effects immediately and for that I developed SEVERE PTSD, a swollen uterus, denial of my dream to become a Chief Master Sergeant and was discharged from the Air Force (General Under Honorable Conditions) as a result of symptoms associated with the rape. In 2009, I continued desperately seeking help through the VA due to the fact that the aggravating circumstances from the MST became too hard for me to handle on my own. I was immediately denied. It is downright callous and illegal for all of the publications, support and services produced by the United States Air Force and Veterans Administration concerning MST sexual assault, to not be acted upon when a soldier is in dire distress. False advertisement in my case is dangerous due to the fact that it gave a suicidal female soldier false hope. While enduring the degree of neglect, disregard, mental and physical illness that I have unfairly been subjected to, the only thing worse would be trusting of what I now know is delusive contentment. I have taken the liberty to be fully aware of the Constitution, The Preamble and the contents of a constitutional tort as it applies to my case.

<u>The Preamble</u>

*We the people of the United States in order to form a more perfect union, ESTABLISH JUSTICE, insure domestic tranquility, provide for the common defense, promote the general*

*welfare, and secure the blessings of liberty to ourselves and our prosperity, do ordain and establish this Constitution for the United States of America* (www.constitution.congress.gov)

The 14th amendment

....(paraphrased) *Nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.*

The legal duty of care

Is created when a physician agrees to treat a patient who has requested his or her services. In determining what that duty requires, physicians should consider whether the care they are providing is that which a "reasonable physician" would provide under the circumstances. In tort law, a duty of care is a legal obligation that is imposed on an individual, requiring adherence to a standard of reasonable care to avoid careless acts that could FORESEEABLY HARM OTHERS, and lead to a claim in negligence. (www.ncbi.nlm.nih.gov) When I was awarded 100% VA disability benefits, it was undoubtedly the Armed Forces accepting responsibility for the disgusting sexual assault I experienced. Without question it is understood immediately that there are extenuating circumstances surrounding this type of abuse that makes justice for me more tedious, broad and the care has to be individually specific. The knowingness that all agencies involved in this tort have the authority to reject and dismiss a crime that the VA and USAF has admitted happened to me is UNCONSTITUTIONAL and the type of criminal disregard that suicidal ideation is made of.

The State Action Clause concerning 14th amendment

The Fourteenth Amendment, by its terms, limits discrimination only by governmental entities, not by private parties.[1] As the Court has noted, the action inhibited by the first section of the Fourteenth Amendment is only such action as may fairly be said to be that of the States. That Amendment erects no shield against merely private conduct, however discriminatory or wrongful.[2] Although state action requirements also apply to other provisions of the Constitution[3] and to federal governmental actions,[4] the doctrine is most often associated with the application of the Equal Protection Clause to the states. (www.constitution.congress.gov)

Elaborating on Reason for Appeal

It is extremely doubtful that the VA and Office of Chief Counsel investigated my claim thoroughly. Reason being, there would have been a clear consensus that this has literally been an 18 year ongoing case. Based on the duty of care standard, the FTCA prescribes a uniform procedure for handling claims against the United States for money damages only an account of damage to or loss of property, or personal injury or death, caused by the negligent or wrongful act or omission of a government employee while acting within scope of his or her office of employment, under circumstances where the U.S. if a private person would be liable in accordance with the law of the place where the act or omission occurred (www.va.gov; *"Claims Under the Federal Tort Claim Act")* On the same website, there are countless publications that falsely state that there are multiple resources available for PTSD, MST, mental health issues as well as physical health care. As far as the expected duty of care, I was not provided:

- Any mental or physical assistance at any time during the multiple times that I reported the MST to my superiors.
- Counseling once my alcoholism took over my life. I had a tremendous nervous breakdown at work and was threatened to be dishonorably discharged.

- Consideration of the mental disability that I suffered from daily, nor my swollen and damaged uterus as a result of being assaulted with a muscle massager while unconscious (denied benefits in 2009 at C and P exam after telling the examiner I had been sexually violated on Tyndall AfB).

- The right antidepressants, sleeping medication or medication for the increasing pain in my stomach. I made every single doctor aware that the medication was ineffective and made my symptoms worse. Instead of treating me like an individual and focusing on my needs, I was often told how certain medicines had worked for other patients and prescribed even more ineffective medicine like a guinea pig. There were countless days that I went into different VA facilities in excruciating pain and it did not matter at all. For years I have asked for medicine that I know would give me some relief but due to the nation's unfortunate Opiod Crisis, I was given no relief and had to resort to purchasing pain medication from people. That is a crime! The VA has been aware of this desperation for years. I have had suicidal and homicidal ideation since the day that the MST occurred. Trying to maneuver life with severe mental illness untreated, unmedicated and unsupported is the most dangerous way to live life. On the brink of suicide, I would often call the Crisis Line and ask that the conversation would not result in any unnecessary attention that would sink me further into the throws of Major Depressive Disorder. Instead of respecting my wishes, I have been totally humiliated multiple times by law enforcement and the local fire department showing up to my home in droves. During one of those visits, I was sexually harassed by a Brooks County Sheriff that continuously sent me sexually explicit messages (I have proof). On today 3/1/2024, I have not received a solution to ANY OF THESE PROBLEMS.

- **<u>Breach (the defendant acted or failed to act below the standard care which was expected)</u>**

  In a personal injury case, breach of duty is based on the premise that the defendant breached a duty of care owed to the plaintiff and that breach caused the plaintiff's injuries (www.injuriesandaccidents.com *Elements of a Tort Breach*) As it pertains to a breach of duty, the USAF and VA have been and are currently refusing to uphold their obligations to me as a veteran. From a position of understanding, I was patient and as a result, I have shown copious amounts of disrespect that a victim does not deserve. In any normal sexual assault and any given agency, if an employee reports that crime to superiors 4 times, some form of legal action would be taken. Instead, I was watched and villainized while I spiraled rapidly beyond my control by superiors that are trained to pick up on the symptoms surrounding a MST. When a patient reports to a doctor/doctors/specialist about abdominal issues, in most cases there will be a remedy in a timely manner. This is going on the 19th year and the pain has (commonsensical) gotten worse and became chronic. As I have stated in prior claims, the VA has the technological capacity to ensure that the "VA will provide the best customer experience in its delivery of care. The VA will use customer experience data and insights in strategy development and decision making to ensure that the voice of veterans inform how VA delivers care, benefits and memorial services" (www.va.gov (I CARE) 38 C.F.R. Part 0). It should be totally illegal for the VA to be able to publish misleading, inflammatory lies to the people that put their young lives on the line to defend our Constitution. Around approximately 2019, I submitted a claim to the VA for back pay concerning the MST and

its after effects. I was denied and told that I had to have suffered a hardship just to have my case expedited. I am unable to work, suffer from severe chronic pain, severe depression, and often have homicidal/suicidal ideation, that would constitute a hardship to any agency other than the VA. My life was stolen away from me in more ways than one based on no fault of my own. It was EVERY SUPERVISORS CONTRACTUAL DUTY to report all that I told them. This is the type of criminal comradery that kills.

- **Causation (It was the defendants actions that actually cause the plaintiff's injury)**

  In regards to the MST in October 2009, after reporting it, instead of receiving help, I was treated horribly and like an outcast which ultimately resulted in a bad paper discharge. I LITERALLY RISKED MY LIFE TO TRY AND GET HELP! There is no secret that many female soldiers that report MST often meet their demise and I was fully aware of that fact. Instead of losing my physical life, I lost everything internally. My drive, motivation, sanity, future (Chief Master Sergeant), self esteem have all vanished. In the beginning of 2024, anxiety attacks turned into panic attacks which have proven to be much worse. Imagine living the life that I live. Nobody deserves the torture of living in survial mode for more than a decade. Everything that I lost, are all vital to not only success but everyday living. One night around people that took a sworn oath to protect me, ruined my life. I deserve justice once and for all.

- **Deplorable Healthcare**

  Enduring the deplorable healthcare that I am being subjected to should easily rise to the level of malpractice and criminality. After failing to receive proper health care ( after the MST) based on the research the VA HAS PROVIDED TO THE WORLD, I felt like maybe my symptoms could be remedied. Once I attended the 2009 C&P exam, (although I was denied) the VA was alerted to the zone of foreseeable danger (the area within which one is in actual physical peril from the negligent conduct of another person or group (www.merriam webster.com). The VA has millions of patients and a running documented history of cause and effect pertaining to those clients which makes the organization totally aware of the cause and effects of MST. Statistically speaking:

  1. 1 in 3 female veterans in the VA healthcare system report experiencing MST which accounts for 60% of veterans that disclose MST ([www.dav.org](www.dav.org))
  2. 20,000 service members are sexually assaulted annually
  3. 64% of those who report MST have faced retaliation
  4. Based on my own recollection, I know that service members are REQUIRED to take extensive training on MST. I now understand the gravity of this due to the fact that it RUINS LIVES and the majority of those lives are very young and impressionable.

It is apparent that victim resources need to be independent of the Armed Forces and any of its affiliates as it is common sense that those entities are working for the best interest of the military.

- **Damages**

  During each and every claim and any time that I have to recant the MST, PTSD and medical negligence, it literally takes days and sometimes weeks to recover. Words could

NEVER describe the torture that I have endured. I dont get days off from this life that I have been forced to live.

1. The likelihood that a person suffers suicidal or depressive thoughts increases after sexual violence
2. 94% of women who are raped experience symptoms of PTSD before two weeks following the rape.
3. 33% if women who are raped contemplate suicide
4. 13% of women who are raped attempt suicide
5. Sexual violence also affects victims relationships with family, friends and co workers
6. 38% of victims of sexual violence experience work or school problems, which can include significant problems with a boss, co worker or peer (www.rainn.org)

The residual effects of being penetrated with a massager left me with multiple reproductive issues that cause extreme pain. After toughing out the pain as long as I could, I went to the Valdosta VA outpatient clinic. The doctor prescribed me tramadol. I eventually told the doctor that the medicine was ineffective and the 30 pills were not enough for the pain that I was experiencing. I was ignored. Out of desperation and agony, I asked a family member if they had any medicine to help with the type of pain that I had (I only had VA insurance). I explained to the doctor THOROUGHLY about this situation and was brutally honest to my detriment. I had no idea about a crisis or anything else associated with the medicine besides the fact that it helped with the pain. I was given a urine analysis and the medication that I had taken showed up. The tramadol was stopped and I have not been prescribed ANYTHING for pain relief. After going to countless exams and doctors appointments concerning the increasing reproductive pain, I was told that I had been flagged and treated like a person addicted to drugs. I pride myself on reputation so naturally this was an unfair and enormous blow. An agency that is responsible for my healthcare, has all of my medical records, x-rays and exams, is refusing to treat my pain. I have reached out to so many doctors, specialists, Patient advocates and the VA white house line more than 50 times only to be treated like trash. The Chief of Medicine with the VA personally wrote me a letter assuring me that he would ensure I received help with the pain which was a total lie. The brutality of constantly getting your hopes up for pain relief is astonishing and also exacerbates MDD symptoms. To add insult to injury, one day I called the VA concerning an appointment and I was referred to as "THE ONE WITH THE TORT". By no means do I feel that the nurse (mental health nurse Valdosta, GA) meant any harm however, the comment validated what I have been suspecting and it is not fair. Throughout all claims that I have filed, I have proved statistical, documentary, admissible, circumstantial and most importantly clear and convincing evidence. In response, I receive denials that are vague, inconsistent with my correspondence, letters that are so common that it can be acquired on a Google search (only difference is that my name is inserted where applicable), my name being spelled wrong and downright "blanket terminology". These injustices are acceptable from the VA, USAF and Office of General Counsel because they are zenith agencies and I am just one veteran that had her life stolen from her. This is discrimination and there needs to be major restoration concerning veterans and the "resources" that are supposed to take care of us. This whole 18 year experience has been a huge <u>Medical Gaslighting Case</u>. There is no feasible explanation as to why I have been attending medical appointments and undergoing countless tests to receive very little help and inadequate diagnoses. IS THE VA REALLY TRYING TO

SAVE LIVES? I have been misdiagnosed repeatedly which is why I feel that I was denied a discovery process by the Office of General Counsel before completing this claim. It would be nothing short of a miracle to be believed, heard and cared for properly as a MST victim. I have NEVER had a good experience with VA or USAF doctors. After each appointment I leave feeling unheard, embarrassed and hopeless. It is illegal for me to diagnose myself and doctors take my inexperienced and medically uneducated guess as factual information. The bias across healthcare is frightening and being a black woman that reported a sexual assault against the USAF has been to my downfall.  Being a victim of constant legal and malicious injury has totally ruined my capabilities to be self sufficient and function properly in all areas. The gravity of this type of discrimination is alarming and should be stopped on a case by case basis.  On January 30, 2024 after reaching out a total of 6 times over two months, I received a call back from Mr. Drave's assistant (Federal Tort Claims Group representative) in regards to MY RECORDS being sent to me concerning this appeal/claim (GDL 510978). I told him that I had only received three documents that had absolutely nothing to do with my correspondence initially and throughout this case. With absolute certainty and against my rebuttal, the assistant assured me that "those had to be the only documents in that file otherwise Mr. Draves would have sent it in. They are not that kind of agency and have no reason to withhold any of my info". Before ending the conversation, I proved that he was lying. I then asked, "Where is my form 95 then? Are you telling me that there has been no correspondence between Mrs. Hastings and other professionals regarding my case?" Fighting Major Depressive Disorder once again (making myself sick), I read the letter sent to me in regards to a copy of my records from the FTCA. In a nutshell, the letter basically states that a decision was made to not provide me with my records due to the potential of an "invasion of privacy" to those involved in the case. I am certain that those security measures were not taken to safeguard my privacy. Hence the comment made by the Mental Health Nurse about me filing the tort claim. Why would these gigantic agencies care about one veteran that had her life completely ruined by being brutally raped? Naturally the purpose in me asking for my records was to prepare for a rebuttal. This is the first time that I have ever been denied a discovery phase. Twice I settled for just the information that I wrote, I was denied that too. Why do I have to file yet another appeal for information that should be readily available to me?  That is a tactic used to waste time and draw this process out longer. On March 19th after concluding this claim, I went through files that I forgot that I had. As a result, I came across the TOTAL CONTRADICTION concerning Mr. Draves (FTCG) and my FOIA request.Within the document responding to my 6th request, there was mention of a balancing test that took place in regards to individuals involved in this case. ( *A balancing test is any judicial test in which the jurists weigh the importance of multiple factors in a legal case. When referring to evidence presented at a trial, the balancing test allows the court to exclude relevant evidence if its probative value is substantially outweighed by danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time or needlessly presenting cumulative evidence. This means if a particular piece of evidence is substantially more prejudicial than it is probative, it may not be allowed in as evidence.(*www.wikipedia.org *Balancing test for Tort Law)* In this instance of denial and other agencies aforementioned, there is a desperate need for checks and balances within government agencies. I was told over the phone by Mr. Draves' assistant that after "supposedly" looking up my file, that there was nothing there to send. Flabbergasted and knowing that this was a blatant lie, I asked if I could just be sent the correspondence that I am the author of....again, he couldn't

find anything. I am now reserving the right (and I hope you do too) to believe anything that the Defendant submits or has submitted. Failing to disclose evidence suggests that there is validity to my case and that I deserve justice. At a minimum, I was denied due process (means that a citizen who will be affected by a government decision must be given advance notice of what the government plans to do and how the government actions may deprive them of life, liberty or property (www.maine.gov) ). Obviously the Federal Tort Group and Office of General Counsel have absolute control, yielding too much power. Implementation of proper checks and balances could have improved operational efficiency during my case as well as many others. Checks and balances are to weigh competing interests so why did the ability to review evidence and statements that were produced concerning MY HEALTH, PERSONAL INFORMATION and right to defend myself not supersede a "potential" unwarranted invasion of personal privacy? Any of the health officials that took part in the gathering of evidence have likely provided me with medical care previously so the chances of me knowing them is pretty high. In an effort for me to properly defend myself, I am certain that the names and personal information could have been redacted somehow. Obtaining personal info for malicious purposes never crossed my mind and quite frankly, I am offended. I have experienced court proceedings, testimonies, and statements. This case does not rise to the level of potential violence in any shape of form. However, it does say that there is something being hidden and that I was lied to concerning records related to a case that I am the Plaintiff in. The VA is also notorious for "misplacing" information when they are under suspicion (happened to me previously but thankfully I took a picture and saved it to my computer). Suppose some statements are lies....I have the right to say so. There are different ways that my records could have come to fruition instead of being lied to saying that I received everything that they had. No attempts were made for me to obtain the tools necessary for this claim. Another lie and guilt by omission. When are these people going to be held accountable?

*Rule 26. Duty to disclose; General Provisions Governing Discovery* (www.law.cornell.edu) states within the Initial Disclosure (A) In General. Except as exempted by Rule 26 (a)(1)(b) or as otherwise stipulated or ordered by the court, a party MUST without awaiting a discovery request, provide to the other parties: (i) the name and if known, the address and telephone number of each individual likely to have discoverable information-along with the subjects of that information-that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment (ii) a copy or description by category and location of ALL documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody or control and may use to support its claims or defenses, unless the use would be solely for impeachment. Without being able to compare and contrast the evidence that FTCA received, how am I to know that the denial is valid? Where is the proof? The denial I received from the Office of General Counsel was so poorly executed that my name was spelled incorrectly. In the same context as *Rayonier vs. U.S.*, the USAF and VA are to be held responsible for repeated negligence on behalf of their employees. It is insulting for OGC to collect my medical records, statements and other correspondence pertaining to this case and not give me the opportunity to rebuttal. This is a prime example of the treatment that I have been receiving this entire time. What these agencies consider as just another case is MY LIFE! The "mission of the Office of General Counsel" is *to identify and meet the legal needs of the Department of Veterans Affairs. Its primary objective is to ENSURE THE JUST AND FAITHFUL EXECUTION OF THE LAWS, REGULATIONS AND POLICIES that the Secretary*

*has responsibility for administering, and by doing so doing enable the Department to accomplish its mission of SERVICE TO OUR NATION'S VETERANS.* Federal torts are applicable based on certain jurisdictions and aspects, however, the Constitution is the Law of the Land surpassing any and all laws if necessary. My 14th amendment rights have/are being violated and I deserve justice once and for all. I have earned the right to try and put my life back together the best that I can. Physical and mental health, money, relationships, goals etc have all been taken from me. I have declined to the point that I am not able to stay gainfully employed. After so many attempts at justice and being denied, mediation is of no interest to me. As I have stated before, many times I AM TIRED OF BEING LIED TO, DISREGARDED AND TAKEN ADVANTAGE OF. In the beginning of the Tort claims process I spoke to Mrs. Hastings initially and she asked two questions that in hindsight raise red flags:

- How did I know about FTCA?
- Did I fill out the Standard Form 95 that I filled out?

To ease the sting of those stereotypical questions, she complimented me by saying that I did a good job answering the questions on the form and it was completed thoroughly. I have now learned that when those types of comments are made by any representative of USAF, VA or Torts Group, soon you will be swept under the rug and given an empty and vague reason for a denial of some sort. "The audacity of me to understand that I have to take on 3 federal agencies by myself to get some type of justice". In my personal opinion, this appeal has risen to the level of a constitutional tort due to a torturous MST and medical negligence both in a complex and drawn out nature. The Veterans Administration has acknowledged the fact that I was raped in 2017 so naturally any attempts at achieving the "whole person concept" should be made in a swift and effortless manner. I have proved my case in every way possible thoroughly and in great detail. I am Vanessa Guillen that didn't die a physical death instead, I have experienced death in every other way as a result of MST. For the past year, I see clearly that I do not fit the expected profile of typical targets of discrimination, my credibility is challenged more, and my statements are scrutinized more than if I was the prototypical victim (www.fuqua.duke.edu). I am part of 55% of black adults that say that they have had at least one of six negative experiences with doctors and other healthcare providers. Less access to quality medical care is the top reason Black Americans experience worse health outcomes giving lower priority to the well being of black people (www.pewresearch.org). Please do not reject my plea in regards to a timeline singling out one of the prerequisites that I have clearly explained and established throughout this claim. If there has to be one sole specific incident (within the 2 year timeframe) I am asking you to refer to the letter that I received from the Executive Health Systems Director David Isaack's on January 5, 2022. When this claim was initially filed with the FTCA, it was within the two year timeframe. The medical negligence and malpractice is an issue that is current, constant and neverending. I am going to enclose proof (after not receiving all my medical records from the VA) that: the VA has been aware of my health concerns and chose not to offer relief, the falsified document from the Executive Health Systems Director, a disability rating letter that at a minimum lists what information the FTG/Office of General Counsel would have to have in order to conduct a fair and impartial decision and last but not least, my previous Standard Form 95 summation (I found recently) that I submitted to FTG and now "doesn't exist". In hindsight, I wish I would have kept a copy of all correspondence for situations like this. In my naive mind, I believed that there is a certain level of integrity that the government operated under. I was very wrong. Although the forms were completed a while apart, they clearly mimic each other. From

the bottom of my heart, I sincerely ask that you help me once and for all. Understand that any errors or potentially missing information is due to the exhaustion of this process as well as the fact that I am severely mentally ill.

In Conclusion

We are not heard and supported fully in these types of cases. I should not be begging for justice and the law should be upheld the first time and every time an egregious crime takes place. Imagine that your duty is to defend our country and you are unable to do so effectively because your supervisor has raped you and you are suffering. Should this tort not rise to the level of justice on my behalf, please answer these questions for me in the denial letter and maybe I can gain clarity:

- Is MST illegal?
- Should military service members especially in a supervisory role be held to a higher standard?
- Is the annual sexual awareness training an option in a real life scenario?
- What type of punishment does rape warrant?
- How many times does a soldier have to report a crime before justice is rendered?
- Is it ok that the VA denied MST in 2009 and then approved it in 2017?
- When a veteran complains repeatedly (to multiple Patient Advocates, White House Veterans Line, supervisors and mental health professionals) about inadequate and negligent healthcare, should they EVER receive a solution? If so, when?
- Once the VA, Office of General Counsel and Federal Tort Group are caught in a lie, shouldn't the entire case be granted to the opposing party?
- Who am I supposed to believe?
- After an 18 year battle, do I not deserve justice once and for all?
- Did the USAF have the authority to ruin my life and not be held responsible?
- When should justice be obtained for ANY crime?
- What would your outlook on the USAF, FTG and OGC be if you were given my set of circumstances?
- WHAT QUALITIES MUST I POSSESS TO BE TREATED FAIRLY AND RECEIVE JUSTICE?
  If I am granted this tort, I will immediately commit myself to an in house mental health facility to help myself due to the severity of my condition as well as getting much needed operations.

Thank you for your time

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

**15. Do you carry accident insurance?** ☐ Yes    If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number. ☐ No

N/A

**16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible?** ☐ Yes ☐ No    **17. If deductible, state amount.**

N/A

**18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim?** (It is necessary that you ascertain these facts).

N/A

**19. Do you carry public liability and property damage insurance?** ☐ Yes    If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code). ☐ No

N/A

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident.  If the incident involves more than one claimant, each claimant should submit a separate claim form.**

### Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted.  Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations.  If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant.  If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

*(a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

*(b)* In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident.  Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)* Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.

A. *Authority:*  The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:*  The information requested is to be used in evaluating claims.
C. *Routine Use:*  See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:*  Disclosure is voluntary.  However, failure to supply the requested information or to execute the form may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501.  Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC  20530 or to the Office of Management and Budget.  Do not mail completed form(s) to these addresses.

**STANDARD FORM 95** REV. (2/2007) BACK



## DEPARTMENT OF VETERANS AFFAIRS
### Department of Veteran Affairs
### Regional Office


### ALIKA SEAY

### VA File Number
### 256 49 3291

### Represented By:
### AMERICAN LEGION
### Rating Decision
### 04/08/2021


## INTRODUCTION

The records reflect that you are a Veteran of the Gulf War Era. You served in the Air Force from January 20, 2004 to August 31, 2007. We received your request for a Higher Level Review on April 5, 2021. Based on a review of the evidence listed below, we have made the following decision(s) on your claim.

Please note: The evidentiary record closed on the date of notice of our prior decision. VA received additional evidence, which was not part of that decision after the record closed. If you would like VA to consider this evidence, you may submit a supplemental claim at any time; however, VA must receive your application within one year of the date of notice of this decision to preserve your right to receive the maximum possible benefit. (38 CFR 3.2500)

You requested to have your higher-level review conducted at the same office that decided your claim. Unfortunately, we were unable to fulfill your request because that office does not have personnel available to conduct higher-level reviews (see 38 CFR 3.2601(e)). Accordingly, we conducted your review at an office with the appropriate personnel available.


## DECISION

2.380 oz 843755-C04-07882734B 0000300 0006821 I=000000



ALIKA SEAY
256 49 3291
2 of 6

Entitlement to an earlier effective date for service connection of posttraumatic stress disorder (also claimed as mood disorder and depression) is denied.

## EVIDENCE

- VA Form 21-0966, Intent To File A Claim For Compensation and/or Pension, or Survivors Pension and/or DIC, received March 29, 2017
- VA Form 21-526 EZ: Application for Disability Compensation and Related Compensation Benefits, received April 28, 2017
- Received on May 23, 2017 copy of Gainesville VA Medical Center outpatient treatment records dated from February 2010 to April 2017
- Received on June 13, 2017 copy of Gainesville VA Medical Center outpatient treatment records dated May 2017
- Received on June 13, 2017 copy of Salt Lake City VA Medical Center outpatient treatment records dated June 2015
- Received on July 19, 2017 service treatment records for period of service from January 2004 to August 2007
- Rating decision dated August 18, 2017
- Notification letter dated August 21, 2017 to Veteran regarding our decision
- Request dated August 25, 2017 to Veteran for additional information in support of claim
- VA Form 21-0781a, Statement In Support Of Claim For Service Connection For Post-Traumatic Stress Disorder (PTSD) Secondary To Personal Trauma, received September 15, 2017
- Received on October 11, 2017 military personnel records for period of service from January 2004 to August 2007
- Received on October 2, 2018 copy of Gainesville VA Medical Center outpatient treatment records dated May 2017 to October 2018
- Received on October 5, 2018 copy of Gainesville VA Medical Center outpatient treatment records dated October 2018 to February 2010
- Received on November 14, 2018 copy of Gainesville VA Medical Center outpatient treatment records dated October 2018 to November 2018
- VA Form 21-4138, Statement in Support of Claim, received October 1, 2019
- VA contract examination conducted on April 9, 2020
- Rating decision dated April 23, 2020
- Notification letter dated April 28, 2020 to Veteran regarding our decision
- Received on May 4, 2020 copy of Gainesville VA Medical Center outpatient treatment records dated from January 2020 to January 2018
- Section (§) 5103 Notice, received May 12, 2020
- Received on June 15, 2020 copy of Salt Lake City VA Medical Center outpatient treatment records dated from January 2019 to June 2015
- Received on June 15, 2020 copy of Pittsburgh VA Medical Center outpatient treatment records dated from September 2019 to May 2019
- Received on June 15, 2020 copy of Gainesville VA Medical Center outpatient treatment records dated from January 2020 to February 2020
- VA Form 21-8940, Veteran's Application For Increased Compensation Based On Unemployability, received November 19, 2020



ALIKA SEAY
256 49 3291
**3 of 6**

- VA Form 20-0995, Decision Review Request - Supplemental Claims, received November 23, 2020
- Received on November 24, 2020 copy of Gainesville VA Medical Center outpatient treatment records dated from October 2019 to July 2018
- Received on December 10, 2020 copy of Gainesville VA Medical Center outpatient treatment records dated from September 2020 to July 2018
- VA Form 21-4138, Statement in Support of Claim, received December 22, 2020
- VA Form 27-0820, Report of General Information, received December 31, 2020
- VA contract examination conducted on January 7, 2021
- VA contract examination conducted on February 1, 2021
- Rating decision dated December 12, 2021
- Notification letter dated March 15, 2021 to Veteran regarding our decision
- Rating decision dated March 23, 2021
- Received on March 23, 2021 copy of Gainesville VA Medical Center outpatient treatment records dated March 2021 to October 2019
- Notification letter dated March 25, 2021 to Veteran regarding our decision
- VA Form 20-0996, Decision Review Request - Higher Level Review, received April 5, 2021
- HLR Informal Conference Worksheet, received April 8, 2021

## REASONS FOR DECISION

### Entitlement to an earlier effective date for service connection of posttraumatic stress disorder (also claimed as mood disorder and depression).

Entitlement to an earlier effective date for service connection for posttraumatic stress disorder (also claimed as mood disorder and depression) has been denied. (38 CFR 3.400)

Review of the file shows we received a claim for service connection for continuing depression on December 18, 2009. We sent a letter dated December 22, 2009 requesting medical evidence in support of your claim. It was determined that no examination was required as the service treatment records did not show treatment or diagnosis of psychiatric condition that started in 2004 as reported on the application. Rating decision dated June 11, 2010 denied service connection for mood disorder, claimed as depression. You were denied service connection as the service treatment records did not show treatment for or a diagnosis of depression. You were notified of this decision on June 15, 2010. You had one year from the date of this letter to appeal this decision. We did not receive an appeal from; therefore, this decision became final.

On March 29, 2017 we received an Intent to File for compensation. On April 28, 2017 we received a complete claim for service connection for psychological issues. At this time, you indicated your condition was due to military sexual assault. Rating decision dated April 23, 2020 granted service connection for posttraumatic stress disorder at 70 percent effective March 29, 2017, the date we received your intent to file as you filed a complete claim for compensation within one year and had continuously pursued your claim since that time. VA regulations provide the effective date for claims received after final disallowance will be date of receipt of new claim or date entitlement arose, whichever is later. In this case, the later of the two dates is the date we received your claim to reopen your previously denied claim. Therefore, there is no

2.380 oz 843785-004-073827348 0000300 0006523 I=000000





**U.S. Department of Veterans Affairs**
**Office of General Counsel**
**Information and Administrative Law Group**

810 Vermont Avenue NW
Washington DC 20420
www.va.gov/ogc

January 22, 2024

In Reply Refer to: 024
**FOIA Request: 24-04875-F**

Ms. Alika Seay
2279 Dewberry Road
Quitman, GA 31643
E-Mail: alika.seay84@gmail.com

Dear Ms. Seay:

This letter is in response to your January 22, 2024 Freedom of Information Act (FOIA) request, to the Department of Veterans Affairs (VA), Office of General Counsel's FOIA Office. You requested a copy of the following records be provided to you:

- I am contacting your office in an effort to receive all of the correspondence regards to case GCL 510978

On January 22, 2024, your request was received by the Office of General Counsel's FOIA Office and assigned FOIA tracking number **24-04875-F** for processing.

We will begin to search for records that are responsive to your FOIA request. Once the search has been completed; we will then respond informing you of the results of the search. If you have any questions about your request, you may contact me at OGCFOIARequests@va.gov.

Sincerely,

GREGORY
DRAVES

Digitally signed by
GREGORY DRAVES
Date: 2024.01.22
14:50:46 -05'00'

Greg Draves
FOIA/Privacy Officer
Office of General Counsel



**U.S. Department of Veterans Affairs**
**Office of General Counsel**
**Information and Administrative Law Group**

810 Vermont Avenue NW
Washington DC 20420
www.va.gov/ogc

January 22, 2024

In Reply Refer to: 024
**FOIA Request: 24-04875-F**

Ms. Alika Seay
2279 Dewberry Road
Quitman, GA 31643
E-Mail: alika.seay84@gmail.com

Dear Ms. Seay:

This is the Initial Agency Decision (IAD) to your January 22, 2024 Freedom of Information Act (FOIA) request, to the Department of Veterans Affairs (VA), Office of General Counsel's FOIA Office. You requested a copy of the following records be provided to you:

- I am contacting your office in an effort to receive all of the correspondence regards to case GCL 510978

On January 22, 2024, your request was received by the Office of General Counsel's FOIA Office and assigned FOIA tracking number **24-04875-F** for processing.

On January 22, 2024, the Office of General Counsel conducted a search of the Torts Law Group's General Counsel Legal Automated Work System (GCLaws) database. The search utilized the key term: 510978

A total of 3 pages of responsive records were reviewed. I have determined that 1 page is being released in its entirety and 2 pages are being released in part pursuant to Title 5 U.S.C. § 552(b)(6), FOIA Exemption 6.

**FOIA Exemption 6** exempts from disclosure of personnel or medical files and similar files the release of which would cause a clearly unwarranted invasion of personal privacy. This requires a balancing of the public's right to disclosure against the individual's right to privacy. The privacy interests of the individuals in the records you have requested outweigh any minimal public interest in disclosure of the information. Any private interest you may have in that information does not factor into the aforementioned balancing test. Specifically, the information being withheld, as indicated on the enclosed documents, under FOIA Exemption 6, consists of names, identities, email addresses, VA usernames, phone numbers, cellular numbers, of federal civilian employees and private citizens; we do however release the names of VA Senior Executives. Federal civilian employees and private citizens retain a significant privacy interest under certain circumstances, such as in instances where the release of their information could represent a threat to their well-being, harassment, or their ability to function within their sphere of employment. The federal civilian employees and private citizens whose information is at issue have a substantial privacy interest in their personal information. In weighing the private versus the public interest, except names of VA Senior Executives, we

find that there is no public interest in knowing the names, identities, email addresses, VA usernames, phone numbers, cellular numbers, of federal civilian employees and private citizens. The coverage of FOIA Exemption 6 is absolute unless the FOIA requester can demonstrate a countervailing public interest in the requested information by demonstrating that the individual is in a position to provide the requested information to members of the general public and that the information requested contributes significantly to the public's understanding of the activities of the Federal government. Additionally, the requester must demonstrate how the public's need to understand the information significantly outweighs the privacy interest of the person to whom the information pertains. Upon consideration of the records, I have not been able to identify a countervailing public interest of sufficient magnitude to outweigh the privacy interest of the individuals whose names are redacted. The protected information has been redacted and (b)(6) inserted. "Withholding a telephone number or e-mail address, alone, is not sufficient to protect that [privacy] interest; alternate means of contacting and harassing these employees would be readily discoverable on the Internet if this court ordered their names disclosed." Long v. Immigration & Customs Enf't, 2017 U.S. Dist. LEXIS 160719 (D.C. Cir. 2017).

## FOIA Mediation

For any questions regarding the processing of this request, you have the right to seek assistance from the VA FOIA Public Liaison or the Office of Government Information Services (OGIS). As part of the 2007 FOIA amendments, the Office of Government Information Services (OGIS) was created to offer mediation services. Similarly, as part of the FOIA Improvement Act of 2016, VA established a FOIA Public Liaison to offer mediation services. You may contact OGIS and the VA Public Liaison in any of the following ways:

**Office of Government Information Services:**
E-mail Address:  ogis@nara.gov
Fax: 202-741-5769
National Archives and Records Administration
Room 2510
8601 Adelphi Road
College Park, MD 20740-6001

**VA FOIA Public Liaison:**
Name: Darryl L. Webb
E-mail:  vacofoiaservice@va.gov

## Appeal Rights

Please be advised that should you desire to do so; you may appeal the determination made in this response to:

Office of General Counsel (024)
Department of Veterans Affairs
810 Vermont Avenue, N.W.
Washington, D.C. 20420
E-mail: ogcfoiaappeals@va.gov

If you should choose to file an appeal, please include a copy of this letter with your written appeal and clearly indicate the basis for your disagreement with the determination set forth in

 Gmail

**Alika Seay <alika.seay84@gmail.com>**

## FOIA Request No.: 24-04875-F
1 message

**OGC FOIA Requests** <OGCFOIARequests@va.gov>    Mon, Jan 22, 2024 at 2:54 PM
To: "alika.seay84@gmail.com" <alika.seay84@gmail.com>

Good Afternoon,

Please find the attached letter acknowledging receipt of your January 22, 2024 FOIA request submitted to the Office of General Counsel's FOIA Office.

Thank you,

**Greg Draves**

**OGC FOIA/Privacy Officer**

**The Office of General Counsel**

**Information & Administrative Law Group (024)**

**Department of Veterans Affairs**

810 Vermont Avenue, NW

Washington, DC 20420

**Phone: (202) 461-7752**

 **OGC Acknowledgment Letter.pdf**
199K

8. Basis of Claim

- In October 2007 when I arrived at Tyndall AFB, I was invited to a welcome party for all the new Airmen by my immediate supervisor Ssgt Dennis Beck. When I arrived at his home there were approximately 20 people including all the other dining facility supervisors, his wife, kids, and brother which gave me another layer of false security. Surely my brand-new supervisor wouldn't do anything wrong amongst his coworkers and family. As the night went on, everyone at the party began to have drinks and enjoy themselves. Beck took the liberty of bringing me a myriad of different alcoholic beverages to "try" and I indulged. Eventually, I noticed that the crowd began to die down which invoked the thought that I should be leaving soon. Awkwardly, his wife and kids were among the first to leave. After drinking the last drink I could withstand, I began to feel disoriented rather than the usual drunk feeling that alcohol gives. I was extremely and violently sick out of the blue. I asked Beck if he could drive me back to the barracks because I could no longer stand up much less operate a vehicle. During the drive to the barracks (4 miles away), he pulled over 4 times for me to vomit. Although incapable of comprehending anything, I still remember having to remove Beck's hand from my thigh. Once we arrived at the barracks, he had to assist me out of his car. Sensing danger, I pulled myself together enough to beg him to go and get Airmen Jennifer Frerichs to help me into my room twice. His response was "I'm not going to do anything to you. I'll put you in your bed and leave." I knew that was a lie but at that point, I could no longer talk or defend myself. The last thing that I remember before losing consciousness is the door flying open, making it to my bed, collapsing and Beck's ugly face standing over me. The next day when I woke up, I was in completely different underwear and clothes. I felt a sharp pain in the bottom of my stomach and pressure in my vagina. When I looked around my room, I saw my massager on the dresser covered in Vaseline and blood. I immediately called Beck in a panic. I asked him what happened and why was I in different clothing. While laughing, he told me that I had vomited on my shirt, and he changed it. I then told him (yelling and crying) that I repeatedly told him to get my friend Jennifer to help me and that he had done more than he was telling me. Lastly I asked him why did he change my underwear..again he laughed and said "He didn't do anything to me." THIS WAS CLEARLY A LIE!! I called my mother and sister and told them what happened to me. My mom told me to report it to my higher-ups. That day, I took a handful of Benadryl, drank half a bottle of Smirnoff vodka and slump into the biggest depression of my life. The fear of potentially being hurt of losing my life had me shaking (It is widely known that the Armed Forces punish female soldiers for reporting damaging incidents) but I had too.  When I went to work at the dining facility the next day, I immediately pulled SSgt Lizandra Alvarez to the side and told her everything that happened. Her response while laughing in my face was "Nothing will happen to him. He is one of the favorites." After the letdown of my life, with tears streaming down my face, I entered the dining facility. Staff Sergeants Hudson, Hart, and Garrett burst out into laughter and began to mock the worst day of my life. I wanted nothing more than to die right there in that dining facility. All my "superiors" were aware of the sexual assault and instead of helping me, it was a big joke to them. Although I knew my life was potentially in danger, I had to tell my superiors. Over time, I told other Airmen and another female Sgt first name Janice (all I can remember) and still no one helped. For this reason, so many female Airmen are suffering the horrible damage that a woman lives after a rape. We are not heard and ignored in most cases. Nobody wants to be treated like I was treated and ultimately discharged for a situation that I had no help

In December 2009 while suicidal, I felt that I had suffered enough, and it was time to put the embarrassment aside and apply for disability benefits and help. My C and P exam was in Gainesville, FL. Yet again, I was completely disregarded by the doctor conducting the examination even after explaining the rape and PTSD. I was denied shortly after. The denial CRUSHED ME. The USAF/VA have failed me again. I had no guidance or assistance simply a denial letter. I spiraled downhill extremely fast. I was unable to keep any job and my menstruation issues only got worse. I had become a sick loser, and nobody was listening to me. I have been complaining about worsening stomach issues and MST PTSD for over TEN YEARS and as of today July 29, 2022 NEITHER issue has been resolved or remedied (CFR § 750.23 (A) § 536.74 A-1-and a-ii *Negligent Conduct)*. I have been treated like a guinea pig. I have told different doctors that so many medications that I have been prescribed were not working only to be prescribed the same thing or something worse. The extent of help that I have received by the VA for chronic pain has been ultrasounds and MRI's. I have begged at least 20 doctors (§750.23 (d) *Scope of Empoyment)* to perform some type of surgery to help me only to receive no help. Pain and mental illness are a recipe for suicide. Unlike other malpractice cases, I have not lost my physical life, nor have I given birth to a severely disabled child, but it is obvious that I have lost so much of my life. As far as my conditions are concerned the VA has failed to: administer medical tests, made misdiagnoses, delayed diagnosis, lack of informed consent, healthcare provider errors, and medication/pharmaceutical errors. In each instance there was a doctor-patient relationship, multiple doctors breached the duty of care, and the breach of care caused me more injuries that could have been prevented/treated. This ordeal is intentional infliction of emotional distress. The distress that I have endured is of such intensity and duration that no ordinary person would be expected to tolerate.  Over the past 5 years, the pain has become so intense that I have no quality of life. I have also called the Crisis line, White House VA, patient advocate, and clinical support line multiple times in an effort to be heard and receive help for the worst pain of my life only to be bombarded with dozens of phone calls the next day that serve no purpose (§ 536.77 3-I,iv, and vii) *Non-economic damages)*. One year, Valdosta VA had begun to prescribe me 50 mg Tramadol (30) for pain. After 2-3 months, I told my primary care physician that the 30 tramadol was not enough and if I am expected to continue to use it for pain, I needed more. Once again, I was ignored. It has always been my belief that the primary concern of healthcare is to reduce pain and suffering. After being told by a former VSO (white male) that he was prescribed the medicine (for a shoulder injury) that he asked for with no effort, I sunk even further into depression. However, throughout the mental illness, I did a little research, and the VA has an issue with prescribing the proper pain medication to black people. Statistically speaking, black people are expected to be able to withstand more pain than white people and that is far from the truth. Research shows that black veterans/patient's pain will likely be underestimated and undertreated. Extant research shows that black patients are given lower quantities (when I reported the Tramadol issue to primary care) or no pain medication at all (for the past 4 years). Unlike my situation and experience has been, opioids are the appropriate treatment for moderate to severe pain. Instead, I would have to go to my local emergency room repeatedly to get medicine that would work for an hour. Doctors have repeatedly recognized my pain and refused to treat it just as the supervisors on Tyndall Afb were informed of MST and watched me decline mentally and physically to the point of being discharged. It is a complete injustice that in 2022 any American is living life with chronic pain and not being treated. In conclusion, medical malpractice is defined as any act or omission by a physician during treatment of a patient that deviates from accepted norms of practice in the medical community and causes injury to the patient* The USAF and VA have taken so much from me and it is time that I receive justice. I do not want to die a

premature death due to medical malpractice. The Veteran's Administration is fully capable of treating my sickness as well as prescribing medicine to remedy this horrible existence I am living. As I write this letter, I am lightheaded, unclean and experiencing the worst pain of my life. I am unable to take care of my daughter properly. Imagine the missed meals, baths, arts and crafts times that my daughter has missed with her mom. She has witnessed firsthand her mother in disabling, crippling pain and she does not deserve this. I was also unable to enroll my daughter in school this year because I am unable to drive, dress her and prepare her for school. As a mother, it doesn't get much worse than that. Finally, as a result of the medical malpractice from the VA I AM ABOUT TO LOSE MY UTERUS!! The agony of knowing that I want more children is life threatening. I have told every doctor since 2006 that I want children and I have every right to do so if I want, however, the pain is physically about to kill me due to the neglect. My life has been stolen because I was raped by Ssgt Beck. Elaborating a little more, I have had to purchase pain medications. I am literally sinking and barely surviving because street medicine costs so much. It goes without saying how dangerous that situation is. What am I expected to do? What would you do? This is nowhere near the type of pain that you can tough out. There is no valid reason for me to not have my own pain medicine regardless of what it may be. In typical repeated malpractice fashion, I have recently been prescribed a medication called Gabapentin which is primarily used to prevent seizures!! My medical records as well as medical conditions prove that I suffer illnesses that require pain medication. I have been to so many appointments and done everything asked of me until I saw that I was not being considered, treated or respected. I have also suggested that I would do a urinalysis to ensure my compliance weekly if necessary. Instead of administering proper healthcare, the VA is constantly criticizing me about missed appointments. If I can barely shower due to chronic pain and depression, how could I possibly attend medical appointments? The desperation that I have experienced for years due to MST gives me more insight and understanding concerning the unfortunate case of Michael Louis vs. State of Oklahoma. It is not right to take the life of anyone but expressing your level of pain and not being helped is basically the medical professionals saying that your life does not matter. Just like Mr. Louis, I have also complained multiple times about pain as well as begging for relief. Surprisingly, I have been experiencing chronic pain for much longer than the suspected. I am in no way using this example to weaponize my feelings, but it is a grim reality of how much pain affects an individual's mental health and everyday life. It is the duty of the Veteran's Administration to fix my situation as much as possible and as swiftly as possible too. The Veteran's Administration has failed miserably for the last for the past 15 years and I am holding them 100% responsible (§536.77 (b-1-I and b-2-iv) *Eligible Claimants)*. How has it failed? (For the sake of this already being a long response, I will try and abbreviate and shorten the responsibilities of the VA to their veterans. However, make no mistake, I am privy to all mission, vision and core value statements)

VA's five core values underscore the obligations inherent in VA's
mission: Integrity, Commitment, Advocacy, Respect, and Excellence. The core values define "who we are," our culture, and how we care for Veterans and eligible beneficiaries. Our values are more than just words – they affect outcomes in our daily interactions with Veterans and eligible beneficiaries and with each other. Taking the first letter of each word—Integrity, Commitment, Advocacy, Respect, Excellence—creates a powerful acronym, "I CARE," that reminds each VA employee of the importance of their role in this Department. These core values come together as five promises we make as individuals and as an organization to those we serve.

It would be a nightmare that I have to wait another year or two for a response after the duration and intensity of my pain. Please please help. During the process of filing this claim, I went to the Valdosta Outpatient Clinic and signed a records release of my mental health history including calls made to the Veterans Crisis Line and the countless times that I have begged for pain medication/a solution to my abdominal issues. As a result, I was sent what appears to be the same exact letter multiple times (most recent Progress Notes that are included). The malpractice within the VA regarding my situation is so unlawful and corrupt that I cannot trust that they will send my full medical history. Thankfully I have a few of my own medical records to provide. There is no amount of money that could repair my mind, body or spirit as a result of being raped and assaulted with a massager. If there is any misunderstanding as to how I arrived at the amount of compensation I am requesting, I feel as though it is owed to me because:

- Negligent and complicit supervisors were not held responsible at all nor reprimanded
- Sgt. Beck was not demoted, discharged, or arrested for the MST that he caused while I was unconscious and begging him to leave.
- I had a PTSD nervous breakdown at work and was threatened with discharge. I was not sent to a hospital nor to see a therapist.
- In 2009 after reporting the MST to a VA physician, I was disregarded and left untreated, and he only noted that I suffered from "depression".
- I ruined so much of my life being an alcoholic. Attempting suicide, cutting myself, and being arrested multiple times because I was depressed and angry.
- I was given a general discharge for trying my best to cope with the trauma of PTSD. No consideration was given to me even after reporting it to the Base Chaplain.
- Incurring a tremendous amount of debt that I am still nowhere near catching up to
- My once fully functional, heroic personality is gone and there is nothing that I can do to help myself. I have had to drop out of college twice due to the mental and physical associated with the MST. I cannot cook, clean, take care of my daughter etc. I have even applied for caregiver assistance with the VA because I cannot do anything. I am so afraid of what the future holds for my situation.
- Trying to accept the reality of me literally risking my life to try and get help. I feared for my life every time I reported the MST even at the Compensation and Pension exam.
- In over a decade, within the VA facilities, I have never gotten past vaginal ultrasounds, MRI's, countless and pointless doctor's appointments where I was being unheard and being prescribed an enormous number of prescriptions that did not work. Just like the recent epileptic medication.
- I have had to self-diagnose myself many times. I would tell the VA doctors what I thought my condition was after doing research. It was always documented as if I had been tested for the condition. No test were ran to confirm any condition besides blood work.
- Spoken with 5 patient advocates a total of 25 times within the past two years, the Veteran's Crisis Line 12 + times, switched doctors 10 times, countless VA specialist, VA White House Hotline 5 times etc.
My family, friends, daughter and most especially I need myself back. I don't want to be at the mercy of the VA healthcare (only for minor things) anymore. I should be able to go to any doctor that I feel would give me the proper care. I deserve all the things that a fulfilling career

or control over. During my next menstruation, I noticed a horrible change. It was way more painful, and I began having blood clots. I started to drink alcohol daily and began cutting myself. A month later I had a severe mental breakdown at work and Alvarez once again did nothing to assist me. Instead, I got in trouble. As time progressed, I became a horrible Airman. Often late, not showering, dirty uniforms, coming to work drunk, unable to focus, and suicidal. I started college in 2007 to try and cope. During this time, I was getting drunk before, during, and after work to cope with the trauma of having to take orders from a supervisor that assaulted me, I was always tired. I had no idea that this was normal behavior for a rape victim. One day I was scheduled for class during work hours. When the time came to go to class, I was so drunk that I went to my room to get ready and fell asleep. Sgt Alvarez found out about it and reported it. Along with all my other shortcomings due to depression, I received an article 15 which ultimately led to me being Generally discharged from the Air Force. As a last resort, I reported the MST once again to the base chaplain during out processing to be ignored again. There I was a recently discharged Airman battling depression and reproductive issues, released into society. My life has been a complete nightmare ever since. I received no support and no justice at all. No arrests, no Article 15's, no discharge for Sgt Beck or any of his accomplices. Failure to diagnose (simply agreeing with what I felt was my illness and documenting it without running test or any other means of detection), Treatment delays and poor aftercare are all malpractice issues that I have been subjected to. It is public record BY LAW that the Veterans Administration is supposed to cover the following:

- Treat illnesses and injuries

- Prevent future health problems

- Improve your ability to function

- Enhance your quality of life

- **We cover inpatient hospital services, like:**

- Surgeries

- Medical treatments

- Kidney dialysis

- Acute care (short-term treatment for a severe illness or injury or after surgery)

- Specialized care (including organ transplants, intensive care for mental and physical conditions, and care for traumatic injuries)

We cover other services and needs, like:

Mental health services to treat certain issues like posttraumatic stress disorder (PTSD), military sexual trauma (MST), depression, and substance use problems.

(www.va.gov/healthcare)

in the Air Force would have provided me. I am begging. How patriotic was my military experience? I was robbed of retirement, Chief Master Sergeant, an honorable discharge, my mental, my reputation, proper medical care for YEARS, JUSTICE and my ability to have children.

Deeply troubled and scared
Alika Seay

P.S. Also please take into consideration how painful it is to relive this situation repeatedly. I am the 2006 version of Vanessa Guillen except I have died more than once. Help me. Dennis Beck needs to be arrested.

*All sentences that cite CFRs were wrote after reading that regulation mentioned. *

- I have included a Rating Decision as proof of my attempts to seek help within the VA and as proof that when I requested my records this month (October) I was not given all my records.

- The letters from the psycologist referring to previous jobs is a representation of how I tried my hardest to remain employed but the PTSD eventually got worse until it effected me mentally and physically. There is also a letter included denying me ano earlier effective date for the MST as well and a denial of caregiver support.

```
---------------------------------------------------------------------
MEDICAL RECORD                                      Progress Notes
---------------------------------------------------------------------
```

NOTE DATED: 07/03/2018 10:43
LOCAL TITLE: OUTPATIENT PREVENTIVE HEALTH & PATIENT EDUCATION (T)
STANDARD TITLE: NURSING NOTE
VISIT: 07/03/2018 13:00 VAL PACT MD8 R1
CHIEF COMPLAINT:
SEAY,ALIKA MONET 33 FEMALE here for provider visit


ACTIVE PROBLEMS:
Hypertension (SCT 38341003)            Epigastric pain (SCT 79922009)
Diarrhea (SCT 62315008)                Depressive episode (SCT 35489007)
Sleeplessness (SCT 193462001)          History of alcohol abuse (SCT 371434005)
Depressive disorder (SCT 35489007)     Overweight
H/O: depression                        Routine Med Exam
Tobacco use (SCT 110483000)            Other Specified Counseling
Pelvic and perineal pain (SCT 274671002)Pelvic inflammatory disease
Gynecological examination normal (SCT 45Psoriasis
Obesity (SCT 414916001)                GERD
Acne


ALLERGIES:Patient has answered NKA


HT: 65 in [165.1 cm] (07/03/2018 10:41)
WT: 222 lb [100.9 kg] (07/03/2018 10:41)
BMI: Patient's BMI is  37 on Jul 03, 2018@10:41:13
TEMPERATURE:98.9 F [37.2 C] (07/03/2018 10:41)
PULSE: 100 (07/03/2018 10:41)
RESPIRATION: 18 (07/03/2018 10:41)
BP:139/90 (07/03/2018 10:41)
PAIN:4 (07/03/2018 10:41)

HABITS:
TOBACCO:YES-2 PER DAY X 5 YRS
ALCOHOL:DENIES
ILLICIT DRUGS:DENIES

NEW MEDICATIONS:DENIES

OUTSIDE PROVIDERS:DENIES

Primary Care Check in
Reason for visit: Other  ANNUAL

Do you need outside prescriptions for local fill at Veteran expense?
  No

Have you been hospitalized since your last visit?
              ** THIS NOTE CONTINUED ON NEXT PAGE **

```
---------------------------------------------------------------------
SEAY,ALIKA MONET                            Printed:04/29/2019 16:14
           N FLORIDA/S GEORGIA VETERANS HEALTH SYSTEM
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 DOB:11/10/1984    Pt Loc: OUTPATIENT       Vice SF 509
---------------------------------------------------------------------
```

| MEDICAL RECORD | CONSULTATION SHEET |
|---|---|

SEAY,ALIKA MONET                                SC LESS THAN 50%
XXX-XX-3291      11/10/1984 (Age: 34)          SC VETERAN

Consultation Results #99574044 continued.

      - Using a combination of behavioral counseling or other support
        strategies and FDA-approved cessation medications is the most
        effective way to ensure success in quitting.

Patient was offered Behavioral Counseling and other support
strategies to assist with quitting.  Discussion with patient
included:
    - Behavioral counseling or other support strategies greatly
      increases your chances of successfully quitting smoking or
      tobacco use by helping you develop a quit plan and providing
      support and other strategies to make behavioral changes to
      help you quit.
    - VA has a number of behavioral counseling options to help you
      with quitting, including:
      * Provide information about the facility smoking or tobacco
        use treatment options or clinics
      * VA's national quitline, 1-855-QUIT-VET, with counseling
        available Monday-Friday
    The patient was not interested in receiving additional
    information about how to use the treatment options discussed.

Patient was offered FDA-approved cessation medications. Discussion
with patient included:
    - Medications for Nicotine replacement therapy such as the
      patch, gum or lozenge, and other medications such as varenicline
      or bupropion, can play an important role in the initial weeks
      and months after you quit smoking or tobacco use.
    - Medications help with cravings and withdrawal symptoms and they
      greatly increase your chances of successfully quitting.
    The patient was not interested in a prescription for tobacco
    cessation medications.
OEF OIF Case Management:
  Veteran is an OEF/OIF Combat Veteran.
  At today's visit OEF/OIF Combat Veteran who was screened for;
  homelessness, mental health concerns, substance abuse issues, suicidal
  and homicidal ideations, problems accessing VA healthcare services and
  benefits, adjustment to civilian life(family/spouse/children), and
  legal issues.

  Within the last 12 months veteran indicated experiencing the
  Following:
  Homelessness or pending homelessness
  Referrals made to address:
   HCHV from Jacksonville
  Suicidal/homicidal ideations and/or attempts
    Referrals made to address: this is first session with general MH
  Problems accessing VA healthcare services and benefits
    Referrals made to address: problems with pain



**DEPARTMENT OF VETERANS AFFAIRS**
North Florida/South Georgia Veterans Health System
1601 SW Archer Road
Gainesville FL 32608-1197

January 5, 2022

Alika Seay
2279 Bewberry Road
Quitman, Georgia 31643

Dear Ms. Seay:

This letter is in reference to your Clinical Appeal received October 6, 2021. It is Veterans Health Administration (VHA) policy that patients have access to a fair and impartial review of medical determinations.

Your clinical appeal is related to assistance with control of your chronic abdominal and pelvic pain. The Chief of Staff's office consulted with Dr. Quynn Gingrich, one of the VA's Pain Medicine specialists. Dr. Gingrich had concerns related to dangerous unprescribed medications found in your urine drug screen from December of 2020. However, it was their conclusion that we should work to help you obtain better pain control.

As such, your Clinical Appeal is approved. Please follow-up with your Primary Care provider for a repeat urine study and discussion of next steps. An important part of your pain control will be regular follow-up with a gynecology provider. You were previously referred to a Community Care gynecology specialist, but numerous appointments were cancelled or not kept. We will renew this referral, but it is very important that you attend all scheduled appointments.

If you have questions about the appeals process, please contact the Patient Advocate's Office at (352) 548-6019. If you have questions about the clinical decision, please contact the Chief of Staff's Office at (352) 548-6018.

Sincerely,

David B. Isaacks, FACHE
Executive Health System Director

```
----------------------------------------------------------------------
MEDICAL RECORD                                          Progress Notes
----------------------------------------------------------------------
```

NOTE DATED: 03/05/2018 16:01
LOCAL TITLE: MENTAL HEALTH MULTIDISCIPLINARY NOTE
STANDARD TITLE: MENTAL HEALTH INTERDISCIPLINARY NOTE
VISIT: 03/05/2018 14:08 VAL PCMHI IND
INDIVIDUAL NOTE:

Date & Time of Session: Mar 5,2018@14:10
Length of Session:  40 minutes.
Present in Session:  Pt and undersigned.

INFORMED CONSENT: psychology service informed consent procedure was followed:
provided the relevant information about her/his evaluation/treatment; and
given the opportunity to ask questions.  Consent for evaluation/treatment
was voluntarily given.  The patient has sufficient decision-making capacity
to make such a decision.

MENTAL STATUS:
ORIENTATION: Alert and oriented to person, place, and time
MOOD: Euthymic
AFFECT: Appropriate
APPEARANCE: Neat, groomed
SPEECH: Normal
MEMORY: Grossly intact (though not formally tested)
INSIGHT: Good
JUDGMENT: Intact
LANGUAGE: Intact
PERCEPTIONS: Reality based
THOUGHT PROCESS AND ASSOCIATION: Goal oriented, logical
THOUGHT CONTENT: Relevant to discussion
FUND OF KNOWLEDGE: Average
ADDITIONAL OBSERVATIONS:

Session Content:
Vet was seen as a walk-in She was last seen by this provider on 02/03/16. When
she comes into the office, she says, "are you ready?" She says that she has
known for quite some time that her "decline" was due to MST in 2005. Since that
time, she feels that this has interfered with every aspect of her life. She says
that she feels unsure of herself, that everyone is out to het her and that she
cannot work in a positive manner with male supervisors. She has urges to last
out at people. She feels that the only thing that keeps her sane is her newborn
daughter. She says that she feels sad, second guesses herself and has difficulty
with sleep. "My life is horrible." She says that she came today out of her
concern that her symptoms not affect her daughter.

Vet was asked to remind provider about the MST, which occurred in 2005. She had
just transferred from Anderson to Tyndall AFB and there was a welcome gathering
for her. Her supervisor, SSgt Beck was there, along with his wife, his brother
and several other people. She had been drinking a good bit and told him that she
did not feel well and needed to go home and he took her. She had been wearing
one outfit the night before and, when she woke up, she was wearing completely
                    ** THIS NOTE CONTINUED ON NEXT PAGE **
```
----------------------------------------------------------------------
```
'AY,ALIKA MONET                                Printed:04/29/2019 15:10
              N FLORIDA/S GEORGIA VETERANS HEALTH SYSTEM
-49-3291 DOB:11/10/1984    Pt Loc: OUTPATIENT            Vice SF 509
```
----------------------------------------------------------------------
```

MEDICAL RECORD                                         Progress Notes
--------------------------------------------------------------------

03/05/2018 16:01      ** CONTINUED FROM PREVIOUS PAGE **

different clothing, including underwear. She also recalls that she "felt funny
in my private area." When she asked him about her change in clothing, he told
her that she had thrown up on herself and that he had changed her clothes. She
later mentioned this in front of other sargeants and they downplayed it. She
realized that her supervisor was a favorite at that post, so did not pursue it.
"I haunts me every single day."

Since our last meeting, vet left the prison and is working for the USPS in
Quitman. She has been there for almost two years. When provider asked how that
was going, she became briefly tearful, saying that she is having problems with
her supervisor, but that so is everyone else who works there. When asked the
type of problems, she gave two examples. Her cycle is unpredictable and she had
an accident at work. She asked to go home and change. He suggested that she use
Depends. In another incident, she missed a scan, he became furious with here,
ran towards her and was throwing chairs out of the way. He demanded that she sit
down in a chair and listen to him. She feels that he shows disrespect to her and
to her co-workers. She made a complaint to the EEOC, but, when they came to talk
with her, it seemed that they only wanted to focus on her absences and her
tardies. She says that she does not want it to reach the point that there is a

When asked, vet says that her goal for sessions is that "I just want to be
normal. It's so bad and it's taken over so much...I need to get myself
together." She is willing to try another antidepressant. She notes that she has
taken sertraline and duloxetine in the past, but did not like the SE's. Will
consider pursuing another antidpressant if she is not breastfeeding.

SAFETY ASSESSMENT:

The patient is currently having thoughts of suicide: NO


Current homicidal ideation: NO

CLINICAL REMINDERS:


Active Problems:
1. Hypertension (SCT 38341003)
2. Epigastric pain (SCT 79922009)
3. Diarrhea (SCT 62315008)
4. Depressive episode (SCT 35489007)
5. Sleeplessness (SCT 193462001)
6. History of alcohol abuse (SCT 371434005)
7. Depressive disorder (SCT 35489007)
8. Overweight (ICD-9-CM 278.02)
9. H/O: depression (ICD-9-CM V11.8)
10. Routine Med Exam (ICD-9-CM V70.0)
                    ** THIS NOTE CONTINUED ON NEXT PAGE **
--------------------------------------------------------------------------------
SEAY,ALIKA MONET                              Printed:04/29/2019 15:10
              N FLORIDA/S GEORGIA VETERANS HEALTH SYSTEM
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 DOB:11/10/1984    Pt Loc: OUTPATIENT          Vice SF 509
--------------------------------------------------------------------------------

```
  MEDICAL RECORD           |    CONSULTATION SHEET
```

SEAY,ALIKA MONET                      SC LESS THAN 50%
XXX-XX-3291      11/10/1984 (Age: 34)  SC VETERAN

PROVISIONAL DIAG: Pelvic and Perineal Pain(ICD-10-CM R10.2)

| REQUESTED BY: | PLACE: | URGENCY: |
|---|---|---|
| STOUT,ALAN WAYNE | Consultant's choice | Routine |
| PHYSICIAN | | |
| (Pager: ) | SERVICE RENDERED AS: | CLINICALLY IND. DATE: |
| (Phone: 2293162619 1229) | Outpatient | Jul 31, 2018 |


CONSULTATION NOTE #94943161


  LOCAL TITLE: GYNECOLOGY CONSULT
STANDARD TITLE: OB GYN CONSULT
DATE OF NOTE: AUG 02, 2018@14:16    ENTRY DATE: AUG 02, 2018@14:16:49
     AUTHOR: STATON,JORDAN PREIS  EXP COSIGNER:
     URGENCY:                     STATUS: COMPLETED

    *** GYNECOLOGY CONSULT Has ADDENDA ***

NEW GYN

Requesting provider: Stout (PCP)

CHIEF COMPLAINT: Pelvic pain

HPI: Ms. (See) SEAY,ALIKA MONET is a 33 y/o G2 P1011 who presents for evaluation
of her chronic pelvic pain.

Patient previously seen by GYN Dr. Stevens (last visit in June 2015).  At the
time visit was listed for PCOS, but appears that primary issue was chronic
pelvic pain and h/o ASCUS Pap smear (from 2010) without follow up. Dr. Stevens
updated a Pap smear (that was normal).  They also discussed the likely
multifactorial origins of her pain which extended to the epigastrum and bladder.
She also noted a h/o childhood sexual abuse and family history of BRCA (mom
breast cancer), but pt never responded to genetics consults.

Pt believes she was diagnosed with endometriosis while she was in the military.
- Has had chronic pelvic pain since at least 2005
- Never had laparoscopy

Pt continues to report chronic pelvic pain daily, worse with menses.
- Pain is present every single day, worst with standing up
- It is located in the lower abdomen and sometimes in the left flank
- Pain is described as "stabbing" in nature
- Notes + dysmenorrhea, + dyspareunia, + dysuria, + dyschezia
- Had a TVUS at South Georgia Medical Center in June 2018
       Pt was told she had a "big cyst on her left ovary"
- Taking chronic ibuprofen and Tramadol

# Progress Notes

MEDICAL HISTORY:
Vet endorses PCOS and psoriasis. She has sleep apnea but has not been prescribed a machine. She was in an MVA in 2014 and experienced a LOC for several minutes.

PSYCHOSOCIAL HISTORY:

Family of Origin:
Vet has grown up in Quitman as one of three children. Her parents separated when she was two years old. Her mother is 51 and disabled due to a h/o CA. She describes their relationship as "up and down." Her father is 55 and she has had an ongoing relationship with him. He is the supervisor at warehouse. She describes him as the "greatest dad on the planet." Both parents have remarried. Vet denies any family history of psychiatric illness Her mother and PGM have a history of alcohol abuse. When asked about childhood abuse, she recalls that her childhood was "full of it." She was raped at the age of 6 by a cousin on one occasion. A friend attempted to rape her when she was 14. She also identifies other physical and emotional abuse.

Education / Employment History:
Vet has an Associate's degree in mass communication. She is currently working online for a degree in paralegal studies. She says that she is failing her classes and attributes this to the current level of stress. Vet entered the USAF at 19 and served for four years. She was in Services and worked with the mortuary overseas. She was in a war zone and deployed to Qatar, but was not in combat. When asked about MST, she says that she was sexually approached by a supervisor. She had been drinking, he touched her inappropriately and she fought him off. She received an Article 15 for not going to school when she was supposed to do so. She was released on 08/31/07 with an General Discharge. As noted, she has been employed at VSP x2 years. She works from 1730 - 0630. She has worked in the tower and in the perimeter car in the past. Most recently, she has been assigned to work in the control booth of the mental health dorms. In the past, she has had temporary jobs, but has also worked as a wild-land firefighter for two years. Given her preference, she would most prefer to work in dispatch.

Relationship History:
Vet has never been married and has no children. She has been in a relationship for eight months. He is currently unemployed.

Current Functioning:
Vet lives with her boyfriend, her sister and her sister's children in a mobile home where she has been for the past 18 months. She enjoys listening to TD Jakes, an inspirational speaker, listening to music and working on her schoolwork when she is in the right frame of mind. When asked about additional stressors, vet says that she has had several close relatives pass away over the past four years. One of these was her aunt and she is now very involved in the care and raising of those children. She has new roles and responsibilities as a result of that. She said that she has always been a "people-pleaser" and the family has always seen her as the strong one. "Everybody depends on me to be a

---

**PATIENT NAME AND ADDRESS (Mechanical Imprinting, if available)**
SEAY,ALIKA MONET
710 SAVANNAH AVE
QUITMAN, GEORGIA  31643
DOB:11/10/1984

**VISTA Electronic Medical Documentation**
Printed at NF/SG VA

# Progress Notes

strong person. I don't know what is happening to me. My whole world is caving in on me." When asked to describe her mood, she says, "Words cannot describe how bad of a mood I've been in. I am stressed to the max. That's not me." Her sleep is poor and she has not been eating regularly. When asked, she admits that she had attempted to OD with the OTC sleeping pills last week. We discussed the possibility of hospitalization, but vet denies current ideation, plan or intent. "I have too many people around me to concentrate on that."

SAFETY ASSESSMENT:

The patient is currently having thoughts of suicide: NO
    If yes:
        [ ] Pt endorses specific PLAN for self-harm
        [x] Pt DENIES specific plan for self-harm at this time

        [ ] Pt endorses INTENT for self-harm
        [x] Pt DENIES intent for self-harm at this time

        [x] Pt endorses possessing the MEANS for self-harm, e.g. OTC sleeping
            pills.
        [ ] Pt DENIES possessing means for self-harm at this time
            Guns in home:  NO
        [ ] Patient counseled about gun safety and educated about proper
                storage/security of weapons

[ ] Other relevant suicide indicators: check all that apply:
            [x] Past suicide attempt as above.
            [ ] Family hx of suicide
            [x] Hx of mental disorders, esp. depression and anxiety
            [x] Hx of alcohol or substance dependence
            [x] Feelings of hopelessness or helplessness:
                [ ] Minimal
                [x] Moderate
                [ ] Severe
                [ ] Acute onset
                [ ] Chronic, but stable
            [ ] Recent loss (social, work, financial)
            [ ] New dx or increase in physical illness
            [ ] Social isolation (widowed, divorced, separated)
            [ ] Pt is:
                [ ] White
                [ ] Male
                [ ] <25 years of age or >45 yrs of age

        [ ] Relevant suicide protective factors: check all that apply:
            [x] Pt has family and community support
            [x] Pt actively involved in mental health tx
            [x] Pt has easy access to ongoing mental health support
            [x] Pt has good problem solving skills
            [ ] Pt has cultural or religious beliefs opposed to self-harm

**PATIENT NAME AND ADDRESS (Mechanical Imprinting, if available)** | **VISTA Electronic Medical Documentation**
SEAY,ALIKA MONET | Printed at NF/SG VA
710 SAVANNAH AVE
QUITMAN, GEORGIA  31643
DOB:11/10/1984

# Progress Notes

```
        [x] Pt is responsible for care to children or family
        [x] Pt can express other plausible reason to live

    [x] Based on above, pt is at  risk for suicide: mild
        [ ] A safety contract is not necessary at this time; pt will call
            9-1-1 or go to nearest ER should SI develop or intensify
        [x] A safety contract has been established: pt agrees to present to
            ER or call 9-1-1 should SI intensify or if pt begins to
            contemplate a plan. Vet agrees to call this provider on a PRN
            basis and was given provider's desk phone number. Vet assures
            provider that she will be safe until our appointment next week.
        [ ] Pt refuses to contract for safety: 911 called/pt escorted to ER
        [ ] Consults placed to other MH services in accordance w/ tx plan
        [ ] Pt safety will be monitored during future visits
        [ ] Pt provided with list of suicide help resources


Current homicidal ideation: NO



                        MEDICAL INFORMATION

(include response to medications, any medication side effects)
 a) CURRENT MEDICAL PROBLEMS: 1. Overweight (ICD-9-CM 278.02)
2. H/O: depression (ICD-9-CM V11.8)
3. Routine Med Exam (ICD-9-CM V70.0)
4. Tobacco user (ICD-9-CM 305.1)
5. Other Specified Counseling (ICD-9-CM V65.49)
6. Pelvic Pain (ICD-9-CM 625.9)
7. Pelvic inflammatory disease (ICD-9-CM 614.9)
8. Abnormal Pap Smear (ICD-9-CM 795.00)
9. Psoriasis (ICD-9-CM 696.1)
10. Obesity (ICD-9-CM 278.00)
11. GERD (ICD-9-CM 530.81)
12. Acne (ICD-9-CM 706.1)

 b) CURRENT VA-PRESCRIBED MEDICATIONS:
Active Outpatient Medications (including Supplies):

    Active Outpatient Medications                        Status
=============================================================================
1)   CHOLECALCIFEROL (VIT D3) 400UNIT TAB TAKE TWO TABLETS  ACTIVE
       BY MOUTH ONE TIME EACH DAY FOR SUPPLEMENTATION OF
       VITAMIN D
2)   MINOCYCLINE HCL 50MG CAP TAKE ONE CAPSULE BY MOUTH     ACTIVE
       ONE TIME EACH DAY FOR FACIAL ACNE
3)   OMEPRAZOLE 20MG EC CAP TAKE ONE CAPSULE BY MOUTH       ACTIVE
       EVERY MORNING 1/2 HOUR BEFORE BREAKFAST FOR STOMACH
```

| PATIENT NAME AND ADDRESS (Mechanical Imprinting, if available) | VISTA Electronic Medical Documentation |
|---|---|
| SEAY,ALIKA MONET<br>710 SAVANNAH AVE<br>QUITMAN, GEORGIA  31643<br>DOB:11/10/1984 | Printed at NF/SG VA |

# Progress Notes

1. Have had any nightmares about it or thought about it when you did not want to?
Yes

2. Tried hard not to think about it or went out of your way to avoid situations that remind you of it?
Yes

3. Were constantly on guard, watchful, or easily startled?
Yes

4. Felt numb or detached from others, activities, or your surroundings?
Yes

Alcohol Screen AUDIT C
  An alcohol screening test (AUDIT-C ) was positive (score=7).

  1. How often did you have a drink containing alcohol in the past year?
  Four or more times a week

  2. How many drinks containing alcohol did you have on a typical day when you were drinking in the past year?
  3 or 4

  3. How often did you have six or more drinks on one occasion in the past year?
  Monthly

Brief Suicide Screen
BRIEF SUICIDE SCREEN
  1. In the past two weeks have you had thoughts of killing yourself?
    Yes
      1a. Do you have a plan?
      No

      1b. Do you have the means to carry out your plan?
      Yes

      1c. Do you intend to carry out your plan?
      No
  2. Have you ever had a suicide attempt?
    Yes
      Description\Dates:  OD on OTC sleep aid last week.
  3. Have you heard voices telling you to harm or kill yourself?
    No
  4. Has anyone in your family ever attempted suicide?
    No

Was the screening tool positive as described above?

---

**PATIENT NAME AND ADDRESS (Mechanical Imprinting, if available)**

SEAY,ALIKA MONET
710 SAVANNAH AVE
QUITMAN, GEORGIA  31643
DOB:11/10/1984

**VISTA Electronic Medical Documentation**
Printed at NF/SG VA

# Progress Notes

```
Yes
   COMPREHENSIVE SUICIDE RISK ASSESSMENT

   Has the patient presented with suicidal ideation, threats, or
   self-harm within the past 30 days?
    Yes
   Specify: OD with OTC sleep aids last week.

   RISK FACTORS IDENTIFIED:

   Psychiatric/ Suicidal History:
         Current Mental Disorder (especially Mood Disorder),
   Active Alcohol or Substance Abuse, Feelings of
   pessimism/hopelessness, Anxious/agitated


   Access to weapons/firearms:
       No access to weapons

   Demographics:
       Negative for risk demographics (male, elderly, caucasian)

   Military Service:
       No military stressor identified, Physical/Sexual assault
   while in service


   Family Stressors:
       No family conflicts identified


   Financial issues:
     No negative financial issues identified


   Medical issues:
       No significant medical problems


   Other Findings:


   ESTIMATED RISK LEVEL:
     Low (no suicide specific actions are needed)
    Vet does, however, agree to a safety plan and will call this
   provider on a PRN  basis. She assures provider that she will
   be safe until next session which is  scheduled for next week.

   SAFETY ACTIONS:
       Other actions are needed now:
```

**PATIENT NAME AND ADDRESS (Mechanical Imprinting, if available)** | **VISTA Electronic Medical Documentation**

SEAY,ALIKA MONET
710 SAVANNAH AVE
QUITMAN, GEORGIA   31643
DOB:11/10/1984

Printed at NF/SG VA

Page 7



**DEPARTMENT OF VETERANS AFFAIRS**
**Board of Veterans' Appeals**
**Washington, DC**

March 9, 2022

In Reply Refer To:  014/AOD/4643
SS 256 49 3291

Alika M. Seay
2279 Dewberry Road
Quitman, GA 31643

Dear Ms. Seay:

This is the ruling on the motion, received in this office on January 26, 2022, to advance your case on the Board of Veterans' Appeals (Board's) docket.

Appeals must be considered in docket number order, but may be advanced if sufficient cause is shown.  38 U.S.C. § 7107(b); 38 C.F.R. §§ 20.800(c), 20.902(c). Sufficient cause includes advanced age (defined as 75 years or more), serious illness, severe financial hardship, or administrative error resulting in a significant delay.  An appeal may also be advanced if the case involves interpretation of a question of law of widespread application affecting other claims, although this is extremely rare.  Any motion for advancement should be supported by pertinent documentation.



In your case, the evidence indicates that you do not meet the requisite 75 year age requirement.  There is also insufficient supporting medical evidence to demonstrate that you have an illness so serious or grave in nature that advancement is warranted. Neither is there evidence that demonstrates severe financial hardship such as a pending bankruptcy, home foreclosure, or homelessness.  General financial difficulties alone are insufficient.  Finally, there is no evidence of administrative error resulting in a significant delay or misinterpretation of a question of law.

In the absence of sufficient cause, your motion is denied.  In accordance with this ruling, your appeal will remain in its current docket number order.  If you submit additional evidence supporting advancement and set forth succinctly the grounds for consideration, I would be willing to consider another motion.  You will receive a copy of the Board's decision as soon as it is issued.

Sincerely,

Thomas M. Rodrigues
Deputy Vice Chairman
Board of Veterans' Appeals

cc: American Legion



**U.S. Department of Veterans Affairs**
**Office of General Counsel**

Torts Law Group
810 Vermont Avenue, NW
Washington, DC 20420
Telephone: (202) 461-4900

In Reply Refer To: GCL 510978

Via Certified-Mail 7008 2810 0000 8922 5190

September 20, 2023

Anika Seay
2279 Dewberry Road
Quitman, GA 31643

RE: Administrative Tort Claim

Dear Ms. Seay,

We would like to share our appreciation for your service to our country.

The U.S. Department of Veterans Affairs (VA), Office of Chief Counsel, has thoroughly investigated the facts and circumstances surrounding the administrative tort claim you filed on November 7, 2022. You alleged that while serving your country you suffered a sexual assault by your immediate supervisor in 2007. After discharge, the VA denied your claim for service-connected benefits. Finally, you assert that the VA Medical Center providers failed to treat your "stomach issues" and military sexual trauma and post-traumatic stress disorder arising from the assault in 2007.

Our adjudication of the claim included a review of your medical records and communication with medical personnel. We also obtained the opinion of gynecology and psychiatry specialists not affiliated with VA.

The Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b) and 2671-2680, under which you filed your claim, provides for monetary compensation when a Government employee, acting within the scope of employment, injures another by a negligent or wrongful act or omission. Medical negligence means there was a breach in the standard of care and that breach proximately caused an injury. The standard of care is the level at which similarly qualified medical professionals would have managed the care under the same or similar circumstances.

Our review concluded that there was no negligent or wrongful act on the part of an employee of the VA acting within the scope of employment that caused compensable harm. Accordingly, we deny the claim.

Moreover, a tort claim is barred unless it is presented within two years after the claim accrues, as provided in section 2401(b), title 28, United States Code (U.S.C.). Accordingly, we deny any allegation of negligence that occurred prior to November 7, 2020 on the basis that it is time barred.

*Ellenbatvigin@va.gov*

Page 2
RE: Administrative Tort Claim of Anika Seay

Regarding the denial of your claim for benefits, it involves the administration of VA benefits and not a tort under State law. Your claim fails to allege a claim cognizable under the FTCA and therefore, there is no jurisdiction to consider your claim under the FTCA. Information on filing benefit claims and appeals with VA can be found at https://www.vets.gov/disability-benefits.  VA's decisions and actions on such benefit claims may be reviewed only by the United States Court of Appeals for Veterans Claims and the United States Court of Appeals for the Federal Circuit and may not be reviewed by any other court (sections 511, 7252, and 7292, title 38, United States Code).   If an error did occur in relation to handling your benefits, you may pursue an appeal through that exclusive review process. Accordingly, that portion of your claim involving benefits is denied on this basis as well.

 If you are dissatisfied with the denial of your claim, you may file suit directly under the FTCA, 28 U.S.C. §§ 1346(b) and 2671-2680.  The FTCA provides that when an agency denies an administrative tort claim, the claimant may seek judicial relief in a Federal district court.  The claimant must initiate the suit within six months of the mailing of this notice as shown by the date of this denial (28 U.S.C. § 2401(b)).  In any lawsuit, the proper party defendant is the United States, not the Department of Veterans Affairs.

Please note that FTCA claims are governed by a combination of Federal and state laws. Some state laws may limit or bar a claim or lawsuit. VA attorneys handling FTCA claims work for the Federal government and cannot provide advice regarding the impact of state laws or state filing requirements.


Sincerely,

*Jennifer Hansen*

Jennifer Hansen
Deputy Chief Counsel